```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT BLUEFIELD
```

BRYAN C. McCURDY and
DORIS W. McCURDY,

      Plaintiffs,

v.                                      Civil Action No: 1:15-03833

MOUNTAIN VALLEY PIPELINE, LLC,

      Defendant.


**MEMORANDUM OPINION AND ORDER**

    Pending before the court is plaintiffs' motion to remand. (Doc. No. 8). In their motion, plaintiffs argue that the amount in controversy does not exceed $75,000, thereby depriving the court of subject matter jurisdiction. For reasons more fully explained below, the motion is **GRANTED** in part and **DENIED** in part.

    I.    **Background**

    Defendant intends to build an approximately 300-mile long interstate natural gas pipeline originating in Wetzel County, West Virginia and terminating in Pittsylvania County, Virginia. (Doc. No. 11 at 1). Under defendant's proposed route, the pipeline will travel through ten counties in West Virginia: Braxton, Doddridge, Greenbrier, Harrison, Lewis, Monroe, Nicholas, Summers, Webster, and Wetzel, but will not provide natural gas to West Virginia customers. (Doc. No. 1, Exh. A at

¶ 27).  Instead, the pipeline will take natural gas from West Virginia to consumers in states farther south.  Id. at ¶¶ 29-30.  According to defendant, it plans to begin construction in January 2017, and plans for the pipeline to be fully operational by December 2018.  (Doc. No. 11 at 2).

Before construction begins, defendant must receive a Certificate of Public Convenience and Necessity (hereinafter "Certificate") from the Federal Energy Regulatory Commission ("FERC").  Id. at 1.  The certification process requires defendant to conduct surveys and environmental studies along the proposed pipeline route.  Id. at 2.  Specifically, defendant must inform the FERC of any potential impact upon natural resources, wetlands, and endangered species located within the proposed pipeline route.  Id.  Defendant has informed the FERC of a proposed timetable for the pipeline and has scheduled a number of these surveys for the summer of 2015.  Id.

Plaintiffs own three tracts of land in Monroe County, West Virginia located within the "proposed survey corridor."  (Doc. No. 1, Exh. A at ¶ 20).  Defendant contacted plaintiffs in late January 2015, notifying plaintiffs of its intent to conduct surveys on their property.  Id.  According to defendant, it must survey three specific endangered species found on plaintiffs' land:  one animal, the Indiana Bat, and two plants, the Shale Barren Rock Cress and the Running Buffalo Clover.  (Doc. No. 11

at 2).  In early February 2015, a pipeline representative called plaintiffs and requested verbal permission to enter their property to conduct surveys.  (Doc. No. 1, Exh. A at ¶ 21).  Plaintiffs declined.  Id. at 22.  Later that month, defendant sent plaintiffs a letter threatening legal action unless plaintiffs granted access to their property before March 9, 2015.[1]  Id. at ¶ 23.

In response, plaintiffs filed suit in the Circuit Court of Monroe County, seeking an injunction preventing defendant from entering their land and a declaration that defendant has no right to enter their property for survey purposes under West Virginia Code § 54-1-3.  (Doc. No. 1, Exh. A).  Alternatively, if the court finds that defendant may enter plaintiffs' property, plaintiffs seek a determination of the area to be surveyed and the scope of defendant's permissible activities while conducting surveys.  Id.  On March 27, 2015, defendant removed the case to this court, invoking the court's diversity jurisdiction.  (Doc. No. 1).  Plaintiffs filed a motion to remand on April 3, 2015, arguing that the amount in controversy

---

[1] On the same day that defendant removed this case to federal court, it filed suit against almost one hundred landowners in the Southern District of West Virginia, seeking entry onto their land for survey purposes.  (Mountain Valley Pipeline, LLC v. Dosier et al., Civil Action No. 5:15-cv-03858).

3

does not exceed $75,000, thereby preventing the court from exercising subject matter jurisdiction. (Doc. No. 8).

## II. Standard of Review

A defendant may remove an action from state court to federal court only if the case could have been brought originally in federal court. Yarnevic v. Brink's, Inc., 102 F.3d 753, 754 (4th Cir. 1996) (citing 28 U.S.C. § 1441). A federal court has original jurisdiction over actions where the controversy exists between citizens of different states[2] and the object of the litigation exceeds $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a)(1) (2012).

Where a party removes a case to federal court alleging diversity jurisdiction, the removing party bears the burden to establish that the object of the dispute satisfies the $75,000 threshold for amount in controversy. Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994). And, the removing party must show, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. See White v. Chase Bank USA, NA., Civil Action No. 2:08-1370, 2009 WL 2762060, at *1 (S.D.W. Va. Aug. 29, 2009) (citing McCoy v. Erie Ins. Co., 147 F. Supp. 2d 481, 488 (S.D.W. Va. 2001)). Under

---

[2] In this case, the parties do not dispute diversity of citizenship, as plaintiffs are citizens of West Virginia and defendant is a LLC formed in Delaware and no members of the LLC hold West Virginia citizenship. (Doc. No. 1 at ¶ 3).

the preponderance of the evidence standard, a party must show that it is "more likely than not" that the amount in controversy satisfies the jurisdictional limit. Judy v. JK Harris & Co. LLC, et al., 2011 WL 4499316, Civil Action No. 2:10-cv-01276, at *3 (S.D.W. Va. Sept. 27, 2011) (citing Landmark Corp. v. Apogee Coal Co., 945 F. Supp. 932, 935 (S.D.W. Va. 1996)).

Evidence supporting the existence of subject matter jurisdiction must be concrete, it "cannot be based upon speculation and bare allegations that the amount in controversy exceeds $75,000." O'Hara v. Capouillez, Civil Action No. 5:13CV119, 2014 WL 1479218, at *2 (N.D.W. Va. Apr. 14, 2014) (internal citations and quotation marks omitted). Where a plaintiff's complaint does not make a specific monetary demand, "a removing defendant must present actual evidence that the amount in controversy is exceeded; simple conjecture will not suffice." Id. (citing Bartnikowski v. NVR, Inc., 307 F. App'x 730, 737 (4th Cir. 2009)). But, as the court has noted before, it need not leave its common sense behind when applying these principles. Mullins v. Harry's Mobile Homes, 861 F. Supp. 22, 24 (S.D.W. Va. 1994).

### III. Discussion

#### A. Natural Gas Act

The Natural Gas Act requires a party seeking to construct a facility for transport of natural gas to obtain a Certificate of

public convenience and necessity from the FERC before commencing construction. 15 U.S.C. § 717f(c)(1)(A) (2012). The Natural Gas Act, 15 U.S.C. § 717 et seq., and its implementing regulations, 18 C.F.R. § 157.1 et seq., set forth the procedure for certification. See E. Tenn. Nat. Gas Co. v. Sage et al., 361 F.3d 808, 818 (4th Cir. 2004). As part of the certification process, the FERC must "investigate the environmental consequences of the proposed project and issue an environmental impact statement." Id. (citing 42 U.S.C. § 4332). At the end of its investigation, the "FERC issues a certificate if it finds that the proposed project is or will be required by the present or future public convenience and necessity." Id. (citing 15 U.S.C. § 717f(e)) (internal quotation marks omitted). When a party receives a FERC Certificate, it may exercise "the right of eminent domain" over any land needed for the project. Id. (quoting 15 U.S.C. § 717f(h)).

Often these Certificates will contain additional "terms and conditions that FERC deems required by the public convenience and necessity." Id. (citing 18 C.F.R. § 157.20) (internal quotation marks omitted). And, often these terms and conditions include completion of necessary surveys. See, e.g., Southern Natural Gas Company, LLC, 152 FERC 61048, 2015 WL 4379314, at *8 (July 16, 2015) (issuing conditional Certificate requiring "the completion of all required surveys and reports"); see also Ozark

Gas Transmission, LLC, 151 FERC 61193, 2015 WL 3477026 at *8 (June 1, 2015).

But, in many cases, a conditional Certificate will afford a party seeking to construct a pipeline many of the same rights as an unconditional Certificate, including the right to exercise eminent domain.  See Gunpowder Riverkeeper v. Fed. Energy Regulatory Comm'n, No. 14-1062, 2015 WL 4450952, at *1 (D.C. Cir. July 21, 2015) ("Under Section 7 of the [Natural Gas Act], . . . issuance of the conditional certificate enabled Columbia immediately to exercise the power of eminent domain to obtain 'the necessary right-of-way to construct, operate, and maintain a pipe line' . . ." (quoting 15 U.S.C. § 717f(h))).  And a party endowed with eminent domain under the Natural Gas Act may obtain immediate possession of land "through the equitable remedy of a preliminary injunction."  E. Tenn. Nat. Gas Co., 361 F.3d at 818.  Needless to say, a party who has obtained possession of land may enter that land for survey purposes.  Consequently, even conditional Certificates can provide a party with a route to condemnation and, thereby, survey access.

### B. Affidavit Evidence

Generally, courts ascertain the amount in controversy by reference to the plaintiff's complaint.  JTH Tax, Inc. v. Frashier, 624 F.3d 635, 638 (4th Cir. 2010) (citing Wiggins v. N. Am. Equitable Life Assurance Co., 644 F.2d 1014, 1016 (4th

Cir. 1981)). Cases where a plaintiff seeks injunctive relief, however, present a more complicated analysis. In such cases, a court should "ascertain the value of an injunction for amount in controversy purposes by reference to the larger of two figures: the injunction's worth to the plaintiff or its cost to the defendant." Id. at 639 (citing Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002)). In this case, plaintiffs argue that the amount in controversy is only $60,000, evidenced by their settlement offer in that amount,[3] and defendant, as the removing party, bears the burden to prove by a preponderance of the evidence that plaintiffs' requested injunction will cost them more than $75,000.

To support the amount in controversy, defendant attached a number of affidavits to its response to plaintiffs' motion to remand. (Doc. No. 11 at Exhs. 3, 4, 5, 6). These affidavits present evidence regarding the estimated overall cost of the project, defendant's proposed schedule for pipeline

---

[3] The court may consider this $60,000 figure as evidence of the value of the injunction to plaintiffs, rather than as an offer of settlement. To determine the propriety of federal jurisdiction, the court must base its decision on the record at the time of removal and, therefore, may not consider settlement demands made after removal. See McCoy v. Erie Ins. Co., 147 F. Supp. 2d 481, 489 (S.D.W. Va. 2001); Watterson v. GMRI, Inc., 14 F. Supp. 2d 884, 850 (S.D.W. Va. 1997). Because plaintiffs proffered the $60,000 figure in affidavits signed on April 3, 2015, after defendant's March 27, 2015 removal, the court will consider this figure as an estimate of the injunction's value to the plaintiffs, but not as an offer of settlement.

construction, the narrow windows within which defendant must complete wildlife surveys, and the approximate daily revenue defendant expects to receive once the pipeline is completed. Defendant argues that an order preventing it from entering plaintiffs' property to conduct surveys required by the FERC for an unconditional Certificate will prevent the timely construction of the pipeline and, therefore, defendant will lose money each day the pipeline is delayed. Defendant contends that these lost profits far exceed the jurisdictional minimum for amount in controversy.

However, as noted above, conditional Certificates can afford the same rights and privileges as unconditional Certificates. While plaintiffs seek to exclude defendant under state law and defendant seeks to enter plaintiffs' property to survey under those same laws, all hope is not lost for defendant if state law should prevent it from entering land to survey. A conditional Certificate could endow defendant with eminent domain and, thereby, survey access to plaintiffs' property. At oral argument on this matter, defendant represented that it needed to have many of the environmental surveys completed to receive a conditional Certificate. It further represented that a number of landowners had complied with defendant's request for survey access and that it has settled claims against a number of the landowners named in other, similar litigation before this

court, making plaintiffs some of the few who have declined survey access.  Therefore, the prospect of a conditional Certificate changes the equation:  defendant need not employ West Virginia law to conduct the necessary surveys on plaintiffs' land, but may conduct surveys on those properties to which other landowners have granted access, receive a conditional FERC Certificate, use the conditional Certificate to obtain immediate possession of land through a preliminary injunction, and then conduct the remaining surveys necessary for an unconditional FERC Certificate.

In light of the route to condemnation afforded by a conditional Certificate and upon review of defendant's affidavits, the court finds that the majority of defendant's evidence does not support a finding that the amount in controversy is met.  A considerable amount of the information defendant presents in its affidavits regard the overall cost of the project.  Indeed, common sense dictates that this project will cost more than $75,000.  While these figures exceed the jurisdictional minimum, defendant must demonstrate that the issue involved in this litigation, plaintiffs' right to exclude weighed against defendant's right to enter, exceeds $75,000.  Because a conditional Certificate likely will allow for the entrance which plaintiffs' injunction seeks to prevent, evidence regarding the delay created by a conditional, rather than

unconditional, FERC Certificate is of particular import in this case.  Evidence establishing this more specific subset of costs, rather than the cost of the pipeline as a whole, speaks to the cost which defendant will incur as a result of plaintiffs' requested relief.

However, defendant's own affidavits indicate that the amount in controversy is not satisfied.  In Exhibit 5 to defendant's response, Matthew Eggerding attests that a conditional Certificate will cost defendant $35,000:  "If MVP receives only a conditional certificate, it will be necessary for MVP's contractors to perform additional reviews of information to be submitted to the FERC at an increased cost of approximately $35,000."  (Doc. No. 11, Exh. 5 at ¶ 12). Needless to say, this does not meet the jurisdictional minimum.

Defendant's remaining evidence regarding the monetary effect of a conditional Certificate is too speculative to support federal jurisdiction.  As the removing party, it remains defendant's burden "to show not only what the stakes of the litigation could be, but also what they are given the plaintiff's actual demands."  Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 449 (7th Cir. 2005) (Easterbrook, J.) (emphasis in original); see also Bartnikowski, 307 F. App'x at 736 (finding evidence too speculative to support subject matter jurisdiction).  Defendant's affidavits include statements such

11

as: "If MVP receives a conditional FERC certificate authorization or the FERC denies MVP's certificate application, then MVP will lose business good will and will be unable to meet its customers' expectations and demands," (Doc. No. 11, Exh. 3 at ¶ 12), and "If the FERC determines that MVP has not filed sufficient environmental data to warrant the issuance of a conditional certificate for the project, then the FERC may deny MVP's certificate application in its entirety." (Doc. No. 11, Exh. 5 at ¶ 13). These statements do not provide the court with actual numbers to support the amount in controversy and do not present the actual, known cost to defendant of a ruling in plaintiffs' favor. The only concrete figure remains the $35,000 cost cited in Eggerding's affidavit. From this evidence, the court cannot conclude that it is "more likely than not" that the amount in controversy exceeds the jurisdictional minimum.

Most importantly, defendant's evidence does not demonstrate how its failure to survey plaintiffs' property before the issuance of a conditional Certificate will cost defendant more than $75,000. Defendant's affidavits evidence the dates with which it must comply to survey certain wildlife species, as well as the cost to defendant if its schedule is delayed. But the affidavits do not evidence the cost to defendant regarding delays in surveying the specific properties at issue in this case, delays that a conditional Certificate cannot remedy.

Defendant's affidavits require the court to assume that it has access to every other property along the proposed pipeline route and that plaintiffs' property represents the only obstacle in its path to an unconditional Certificate. But the court acknowledges that this cannot be so: while defendant represents that a majority of landowners within the pipeline's proposed route have allowed access for surveys, litigation remains pending before this court regarding these same issues of survey access on other landowners' properties. Just as common sense dictates that the pipeline's overall cost will exceed $75,000, common sense also allows the court to recognize that a project of this magnitude cannot adhere to a rigid schedule and does not hinge on plaintiffs' property alone. It would be improper for this court to attribute any schedule delays, incurred for any reason, solely to defendant's inability to survey plaintiffs' property. While defendant has demonstrated what the stakes of the litigation could be, it has not produced concrete evidence of what the stakes are, given plaintiffs' actual demands.

Despite defendant's affidavits, questions remain as to whether the object of the instant litigation exceeds $75,000. The court must resolve these questions in favor of remand. While defendant may prefer a federal forum,[4] it must demonstrate

---

[4] It is important to note that this opinion does not reach the merits of plaintiffs' requested injunction. Instead, this

"a logical connection between its speculative amount and the actual controversy." Jarrett-Cooper v. United Airlines, Inc., 586 F. App'x 214, 216 (6th Cir. 2014). For all of these reasons, the court finds that defendant has failed to establish by a preponderance of the evidence that the amount in controversy is met and, accordingly, plaintiffs' motion to remand is **GRANTED**.

### C. Plaintiffs' Request for Attorneys' Fees

Plaintiffs' motion for remand requests attorneys' fees and costs. (Doc. No. 9 at 10). Under 28 U.S.C. § 1447(c), "[a]n order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The court looks to the "reasonableness of the removal" to determine whether an award of attorneys' fees is appropriate. Martin v. Franklin Capitol Corp., 546 U.S. 132, 141 (2005). "Absent unusual circumstances, courts may award attorney fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Id. The court may take into consideration unusual circumstances that warrant award of attorneys' fees, such as the "failure to disclose facts necessary to determine jurisdiction." Id. There

---

opinion and order concerns only federal jurisdiction and whether defendant has demonstrated a right to litigate this matter in federal court.

is no presumption in favor of awarding attorney fees and the matter is left to the court's discretion.

In this case, the court finds it unnecessary to award attorneys' fees. The court cannot find that defendant lacked an objectively reasonable basis for removal and there is no indication that either party failed to disclose those facts necessary to determine jurisdiction. Accordingly, plaintiffs' request for attorneys' fees is **DENIED**.

### D. The Court's May 22, 2015 Memorandum Opinion and Order

Finally, the court acknowledges that this opinion is in conflict with its May 22, 2105 memorandum opinion and order. In that opinion, the court examined plaintiffs' complaint, which seeks relief solely on the basis of state law, and determined that plaintiffs' requested injunction likely would prevent defendant from both surveying and condemning property within the pipeline's corridor, thereby bringing about an end to the proposed pipeline in West Virginia. The court based its opinion on the broad relief sought by plaintiffs in their complaint and an understanding that federal law did not provide defendant with a right to enter plaintiffs' property to conduct the surveys necessary for FERC certification. See Tenn. Gas Pipeline Co. v. Garrison et al., Civil Action No. 3:10-CV-1845, 2010 WL 3632152, at *2 (M.D. Pa. Sept. 10, 2010) ("Simply put, the Natural Gas

Act does not provide for pre-condemnation entry onto Plaintiff's property . . ."); Walker v. Gateway Pipeline Co., 601 So.2d 970, 975 (Ala. 1992) ("The [Natural Gas Act] addresses the actual construction of facilities, not entries that may take place prior to such construction and in preparation for acquiring a certificate of public convenience and necessity from the FERC."). Indeed, the court understood that plaintiffs would not seek relief solely under state law if that relief would be undercut by federal provisions.

However, plaintiffs represented in their motion to reconsider, and defendant acknowledged at oral argument on this matter, that the terms of a conditional FERC Certificate would grant defendant the right to enter and survey plaintiffs' property. Furthermore, defendant represented that it plans to use West Virginia eminent domain law to gain access to property within the pipeline's proposed corridor, but ultimately plans to use federal eminent domain law to condemn property and build the pipeline. As a result, a potential ruling in plaintiffs' favor would not doom the pipeline. Plaintiffs are entitled to seek the relief which state law affords them, even if that relief is rendered moot by a conditional FERC Certificate.

## IV. Conclusion

For the foregoing reasons, the court concludes that it lacks subject matter jurisdiction over this dispute.

Accordingly, plaintiffs' motion to remand, (Doc. No. 8), is **GRANTED** in part and **DENIED** in part. It is **ORDERED** that this action be remanded for all further proceedings to the Circuit Court for Monroe County.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and a certified copy to the Clerk of Court for the Circuit Court of Monroe County.

**IT IS SO ORDERED** this 23rd day of July, 2015.

                Enter:

                */s/ David A. Faber*
                David A. Faber
                Senior United States District Judge